UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| DENNIS R. SPURGEON | * | CIVIL ACTION NO. 6:11-1807 |
| | * | |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| | * | |
| SWIFT GROUP, L.L.C. | * | MAG. JUDGE PATRICK J. HANNA |
| AND CALVIN J. LELEUX | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUGGESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MAY IT PLEASE THE COURT:

Pursuant to the Court's Scheduling Order, defendants, Swift Group, LLC, Calvin J. LeLeux, Jeff LeLeux, ICS, Nett, Inc., Shehraze Shah, Khurram Shah, Swiftships Shipbuilders, LLC, Swiftships, LLC, and Swiftships Group, Inc. respectfully submit the following suggested findings of fact and conclusions of law.

1. This controversy is between parties whose citizenships are completely diverse.

2. In connection with the sale and transfer of plaintiff's 40% interest in Swift Group, LLC, a settlement agreement was reached on September 20, 2002 which included a transfer of plaintiff's 40% interest in Swift Group, LLC in consideration of a 33.33% of the net proceeds of the sale of two (2) tracts of immovable property. The parties to this transaction were Plaintiff, Robert Ness[1] (another former member of Swift Group, LLC), and Calvin LeLeux.

3. Maintaining that the aforementioned agreement was breached, on May 18, 2011, the parties entered into a second settlement agreement which included several installment payments in cash.

---

[1] Mr. Ness has not been joined to these proceedings.

It also included that the Freeport Parcel should be sold within 18 months and plaintiff to receive 1/3 of the net sales price, or in default thereof to pay plaintiff 1/3 of the appraised value. The parties to this agreement included plaintiff, plaintiff's spouse, Calvin LeLeux, Swift Group, LLC, Swiftships Shipbuilders, LLC, Swiftships Freeport, Inc, and Champion Shipyards, Inc.

4.  This settlement agreement was allegedly breached as well, which alleged breach gave rise to this litigation.

5.  On June 28, 2000, Swiftships Shipbuilders, LLC, as maker, and Calvin LeLeux, Plaintiff, Robert Ness, Swift Group, LLC, Swiftships Technologies, LLC, Land & Industrial Asset Management, LLC and Champion Shipyards, Inc., as guarantors, signed a Note and Loan Agreement to secure funds for working capital through the United States Department of Agriculture, though the BLX, as its agent, in the original principal amount of $4,000,000.00. This loan is hereafter referred to as the "BLX Loan".

6.  The makers and endorsers of the BLX Loan included Swiftships Shipbuilders, LLC, as maker, and Calvin LeLeux, Plaintiff, Robert Ness, Swift Group, LLC, Swiftships Technologies, LLC, Land & Industrial Asset Management, LLC and Champion Shipyards, Inc., as guarantors, including limited guarantees from plaintiff, 40%, LeLeux 20% and Ness, 40%. The loan was further secured by the United States Department of Agriculture.

7.  Beginning in August, 2007, Swiftships was in default of the BLX Loan.

8.  The balance due on the BLX Loan amounted to $4,592,689.23, with additional sums of $374,011.23 in miscellaneous expenses, and $186,956.18 in attorney's fees.

9.  On December 15, 2008, BLX filed a complaint seeking foreclosure.

10. Judgment was entered on February 8, 2011 against plaintiff, Ness, Leleux, Swiftships Group, LLC and Swiftships Shipbuilders, LLC., severally and in solido.

11. In the years leading to 2014, Swiftships Shipbuilders, LLC no longer had the financial resources to continue business and was in danger of losing the government contracts.

12. Swift Group, LLC and Swiftships Shipbuilders LLC found an investor, Shehraze Shah, willing to purchase the assets of Swift Group, LLC and Swiftships Shipbuilders, LLC and to assume certain (but not all of its liabilities). Calvin LeLeux was ill and did not want to continue to operate Swift Group, LLC or Swiftships Shipbuilders, LLC.

13. On January 1, 2014, Swiftships Shipbuilders, LLC and Swift Group entered into an asset purchase agreement "APA" with Mr. Shah's new company, Swiftships, LLC.

14. At the time of the APA, neither Mr. Shah nor ICS Nett, Inc. had any ownership interest in either Swiftships Shipbuilders, LLC or Swift Group, LLC. Shehraze Shah was one of several stockholders of ICS Nett, Inc.

15. The APA included all of the assets of Swift Group, LLC and Swiftships Shipbuilders, LLC and certain (but not all) of its liabilities. The liabilities assumed included payment of the BLX loan, state and federal income tax liens, the obligations of the seller to perform the contracts with various contractors, including the U.S. Navy.

16. The APA was developed largely to satisfy the U.S. Navy that its contracts would be completely and timely performed.

17. To purchase these assets and assume these liabilities, Shehraze Shah formed a limited liability company (Swiftships, LLC) in Virginia.

18. This limited liability company, Swiftships, LLC, has as its sole member, Swift Groups, Inc., a Delaware corporation, whose shareholders included Shehraze Shah (79 shares) and Jeff LeLeux (19 shares).

19. Both Jeff Leleux and Shehraze Shah contributed to the capital of Swift Groups, Inc. . Shah's contribution was cash, and Jeffrey LeLeux's contribution was: his knowledge, skill and experience in shipbuilding.

20. Following execution of the APA, Swift Group, LLC and Swiftships Shipbuilders, LLC ceased all operations, became and has remained dormant.

21. In order to maintain Swiftships LLC's newly acquired assets and to discharge the assumed debts of Swift Group, LLC and Swiftships Shipbuilders, LLC, Shehraze Shah made and endorsed personally loans from First NBC Bank in the approximate amount of $70,000,000 which loans were secured by all of the property of Swiftships, LLC. In order to maintain its priority ranking as a secured creditor, First NBC Bank had Swiftships Shipbuilders, LLC and Swift Group, LLC remain on the notes and loan agreements as makers and borrowers.

22. On February 11, 2011 plaintiff filed this action against Swift Group, LLC and Calvin LeLeux alleging breach of the settlement agreement.

23. On April 16, 2012, plaintiff filed his first amended complaint adding as defendants, S. Lutfi Hassan and Apex Worldwide Consulting, LLC, and added an allegation that the APA should be revoked pursuant to Louisiana Civil Code article 2036.

24. On February 6, 2013, plaintiff filed his second amended complaint adding Equipment Co. LLC and L & H Land and Minerals, LLC as defendants.

25. On December 5, 2016, plaintiff filed his third amended and restated complaint. This complaint added ICS Nett, Inc, alleging that ICS Nett, Inc. is the alter ego of Swift Group, LLC, deleted Equipment Co. LLC and L & H Land and Minerals, LLC as defendants and deleted as a cause of action the revocatory action alleged in his original complaint.

26. On October 4, 2017, plaintiff filed his fourth supplemental and amended complaint. This complaint added Shehraze Shah, individually, Khurram Shah, individually, Jeffrey LeLeux, individually, Swiftships Shipbuilders, L.L.C., Swiftships, LLC and Swiftships Group, Inc. as defendants. The allegations of this complaint include a cause of action for fraud. In particular, plaintiff alleges that these individuals control all business decisions involving the other corporate Defendants, and that these Defendants implemented a plan to ensure that Defendant, Calvin J. LeLeux, was judgment proof as to the claims asserted by plaintiff. The fraud allegations include that the above-described "plan" had Calvin LeLeux's interests in the assets in question transferred to his son, by giving to him, without compensation, interest in the corporations holding the Swift Group assets: i.e., Swiftships Shipbuilders, LLC and/or Swiftships, LLC and/or Swiftships Group, Inc.

27. The evidence does not support these allegations of fraud, and moreover are factually incorrect. Jeff LeLeux was never an owner of Swiftships Shipbuilders, LLC or Swift Group, LLC.

28. The relief prayed for by plaintiff is limited to (1) A money judgment against Defendants, ICS Nett, Inc., Swiftships, LLC, Swift Group, LLC, Swiftships Shipbuilders, LLC, Shehraze Shah, Khurram Shah, Jeffrey LeLeux and Calvin LeLeux, for damages in the amount of the value of Spurgeon's 40% at the time of his transfer of ownership, or in the minimum amount of $1.4 million, whichever is greater, representing damages due and owing Spurgeon as a result of the breach of the Settlement Agreement dated May 6, 2011, together with legal interest thereon from date of breach until paid; (2) A money judgment against Defendants, ICS Nett, Inc., Swiftships, LLC, Swift Group, LLC, Swiftships Shipbuilders, LLC, Swiftships Group, Inc., Shehraze Shah, Khurram Shah, Jeffrey LeLeux and Calvin LeLeux, for damages in the amount of the value of Spurgeon's 40% at the time of his transfer of ownership, or in the minimum amount of $1.4

million, whichever is greater, representing damages due and owing Spurgeon as a result of fraud and violation of Louisiana Unfair Trade Practices Act, together with legal interest thereon from date of judicial demand until paid and for reasonable attorney fees; (3) A declaratory judgment finding that Defendants, ICS Nett, Inc., Swiftships, LLC, Swiftships Shipbuilders, LLC and Swiftships Group, Inc., are the alter egos of Swift Group, LLC and that these Defendants are liable to Spurgeon from damages arising from the breach of the Settlement Agreement dated May 6, 2011; (4) A declaratory judgment finding that the BLX judgment purchased by Defendant, ICS Nett, Inc., is unenforceable against Spurgeon or, alternatively, if the Court finds that ICS Nett, Inc. is entitled to enforce its judgment against Spurgeon, then Spurgeon seeks and is entitled to judgment against all Defendants for the amount sought; and (5) An award of reasonable attorney fees incurred by plaintiff.  Plaintiff's claims for specific performance and a revocatory action and violation of the Louisiana Unfair Trade Practices Act have been abandoned.

CONCLUSIONS OF LAW

1.	A corporation or a limited liability company enjoy juridical person status and are separate and distinct from their shareholders or members.  La. R.S. 12:1320 B.

2.	A Louisiana limited liability company is a separate legal entity from its members. *Glod v. Baker*, 02–988 (La. App. 3d Cir.8/6/03), 851 So.2d 1255, 1265, writ denied, 03–2482 (La.11/26/03), 860 So.2d 1135; *Metro Riverboat Associates, Inc. v. Bully's Louisiana, Inc.*, 99–0983 (La. App. 4th Cir.1/24/01), 779 So.2d 122, 125, writ denied, 01–1088 (La.6/1/01), 793 So.2d 199; *Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C.*, 2011-2254 (La. App. 1 Cir. 7/10/12, 5), 97 So.3d 595, 598

3.	Except as otherwise specifically set forth in the LLC, no member, manager, employee, or agent of a limited liability company is liable in that capacity for a debt, obligation, or liability of

the limited liability company. La. Rev. Stat. Ann. § 12:1320(B). See also, *Ogea v. Merritt*, 130 So. 3d 888 (La. 2013).

4. The economic purpose underlying this framework of limited liability (corporate or limited liability companies) has been described by Louisiana Courts as a "[P]rotection from individual liability encourages and promotes business ... and industry...." *Johnson v. Kinchen*, 160 So.2d 296 (La.App. 1st Cir.1964).

5. Additionally, this shareholder/member liability shield encourages business investments in high-risk areas by enabling investors who utilize the corporate form to make capital contributions to corporations while insulating their personal wealth from the risks inherent in business. *Smith v. Cotton's Fleet Service, Inc.*, 500 So.2d 759 (La.1987); *Glazer v. Commission on Ethics for Public Employees*, 431 So.2d 752 (La.1983).

6. Because of the beneficial role of the corporate concept, the limited liability attendant to corporate ownership should be disregarded only in exceptional circumstances. *Johnson v. Kinchen*, supra.

7. There are limited exceptions to the rule of non-liability of shareholders for the debts of a corporation where the court may ignore the corporate fiction and hold the individual shareholders/members liable.

8. Generally, that is done where the corporation is found to be simply the "alter ego" of the shareholder/member.

9. The involvement of a sole or majority shareholder in a corporation is not sufficient alone to establish a basis for disregarding the corporate entity. *Id.* Louisiana courts are very hesitant to hold a shareholder, officer or director personally liable for corporate obligations. *Shoemaker v.*

*Giacalone*, 34,809 (La. App. 2d Cir.06/20/01), 793 So.2d 230, writ denied, 2001–2614 (La.12/14/01), 804 So.2d 632.

10. It should be kept in mind that, in Louisiana the concept of the separation of the corporate entity from those who compose it, is the general rule and is firmly established. *Id.* La. C.C. Art. 24.

11. The mere fact that there is a commonality of personnel and centralization of power by virtue of ownership of stock insufficient to warrant a piercing of the corporate veil. *Town of Haynesville, Inc. v. Entergy Corp.*, 42,019 (La. App. 2 Cir. 5/2/07, 6), 956 So.2d 192, 196, writ denied, 2007-1172 (La. 9/21/07), 964 So.2d 334.

12. When a party seeks to pierce the corporate veil, the totality of the circumstances is determinative. *Harris v. Best of America, Inc.*, 466 So.2d 1309 (La. App. 1st Cir.1985); *Liberto v. Villard*, 386 So.2d 930 (La. App. 3d Cir.1980).

13. At the time of the original settlement agreement plaintiff seeks to enforce, only Calvin Leleux and Swift Group, LLC were parties.

14. In order to pierce the corporate veil, plaintiff has the burden of proving that entities, other than Swiftships Group, LLC, are the alter ego of Swift Group, LLC.

15. The factors that courts have considered in deciding whether two (2) or more parties are alter egos of each other include:

    (a.) commingling of corporate and shareholder funds;

    (b.) failure to follow statutory formalities for incorporating and transacting corporate affairs;

    (c.) undercapitalization;

    (d.) failure to provide separate bank accounts and bookkeeping records; and

    (e.)    failure to hold regular shareholder and director meetings. *Kingsman Enterprises v. Bakerfield Elec. Co.*, 339 So.2d 1280 (La. App. 1st Cir.1976); *Smith-Hearron v. Frazier, Inc.*, 352 So.2d 263 (La. App. 2d Cir.1977), writ denied, 353 So.2d 1337 (La.1978).

16.    Another doctrine used to pierce the corporate veil is referred to as the single-business enterprise doctrine.

17.    In order to succeed in this attack on corporations/limited liability companies, the plaintiff bears the burden of proof.

18.    When determining whether a corporation is an alter ego, agent, tool or instrumentality of another corporation, the court is required to look to the substance of the corporate structure rather than its form. The following factors have been used to support an argument that a group of entities constitute a "single business enterprise":

    (a.)    corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;

    (b.)    common directors or officers;

    (c.)    unified administrative control of corporations whose business functions are similar or supplementary;

    (d.)    directors and officers of one corporation act independently in the interest of that corporation;

    (e.)    corporation financing another corporation;

    (f.)    inadequate capitalization ("thin incorporation");

    (g.)    corporation causing the incorporation of another affiliated corporation;

    (h.)    corporation paying the salaries and other expenses or losses of another corporation;

  (i.)  receiving no business other than that given to it by its affiliated corporations;

  (j.)  corporation using the property of another corporation as its own;

  (k.)  noncompliance with corporate formalities;

  (l.)  common employees;

  (m.)  services rendered by the employees of one corporation on behalf of another corporation;

  (n.)  common offices;

  (o.)  centralized accounting;

  (p.)  undocumented transfers of funds between corporations;

  (q.)  unclear allocation of profits and losses between corporations; and

  (r.)  excessive fragmentation of a single enterprise into separate corporations.

These factors are similar to factors that have been used in Louisiana's "piercing the veil" cases.

19. No one factor is dispositive of the issue of "single business enterprise." *Green v. Champion Ins. Co.*, 577 So.2d 249, 257–58 (La. Ct. App.1991), writ denied, 580 So.2d 668 (La.1991).

20. I find that there is insufficient evidence for piercing the corporate veil in this cause, nor for declaring that the defendants are engaging in a single business enterprise..

21. There is no evidence in the record suggesting common officers, common owners (other than Shah being a shareholder of ICS, Nett, Inc. and of Swiftships Group, Inc.).

22. There is no evidence in the record suggesting allocation of profits and losses between Swift Group, LLC, Swiftships Shipbuilders, LLC, ICS Nett, Inc., Swiftships, LLC or Swiftships Group, Inc. or any of these individual defendants.

23. There is no evidence in the record suggesting unified administrative control of corporations whose business functions are similar or supplementary.

24. There is no evidence in the record suggesting services rendered by the employees of one corporation on behalf of another corporation, common officers or directors, or centralized accounting, or undocumented transfers of funds between corporations.

25. The weight of the evidence demonstrates that -- due to the exigencies of the U.S. Navy requirements and its ever present threat to terminate the executory contracts, and Swiftships Shipbuilders, LLC's and Swift Group, LLC's inability to perform the executory contracts, the desire of Swiftships, LLC to acquire the assets of Swift Group, LLC and Swiftships Shipbuilders, LLC and the level of investment made by Swiftships, LLC, and Mr. LeLeux's desire to relieve himself of the financial pressures associated with continuing to operate either Swift Group, LLC or Swiftships Shipbuilders, LLC -- this was an arms-length transaction which was not designed to defraud any creditors. Rather, this was a new company with a new investor with new capital, who acquired the assets of Swift Group, LLC and Swiftships Shipbuilders, LLC along with certain of its liabilities, which as a major investor acquiring assets had every right to do.

26. The chief advantage of an asset sale over a merger or share exchange is the ability to pick and choose among assets and liabilities to be transferred. Glenn G. Morris & Wendell H. Holmes, 8 Louisiana Civil Law Treatise, Business Organizations § 37.02 (2015). See also, *J.D. Fields & Co., Inc. v. Nottingham Const. Co., LLC*, 2015-0723 (La.App. 1 Cir. 11/9/15, 6), 184 So.3d 99, 102

27. The continued use of the trade name "Swiftships" was part and parcel of the acquisition by Swiftships, LLC of the intangible property of Swift Group, LLC and Swiftships Shipbuilders, LLC.

28. While plaintiff may be able to point to facts which indicate less than precise handling of corporate affairs, such evidence does not thwart the basic requirement of maintaining a separate

existence between the shareholders/members or third parties when viewing the entire circumstances.

29. In fact, the evidence shows that Swiftships, LLC was run on a corporate footing, with Jeff LeLeux and Shehraze Shah regularly meeting informally about business operations, which in the context of small closely-held corporations is sufficient to satisfy the spirit of the requirement. See, e.g., *Chaney v. Godfrey*, 535 So.2d 918, 921 (La. Ct. App.1988); and *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La.1991).

30. Accordingly, the plaintiff's prayer that this court declare all defendants are operating as single business enterprise or that any of these defendants are the alter ego of Swift Group, LLC or Swiftships Shipbuilders, LLC is denied.

31. Plaintiff has also prayed for a declaratory judgment finding that the BLX judgment purchased by Defendant, ICS Nett, Inc., is unenforceable against Spurgeon or, alternatively, if the Court finds that ICS Nett, Inc. is entitled to enforce its judgment against Spurgeon, then Spurgeon seeks and is entitled to judgment against all Defendants for the amount sought is denied.

32. However, an assignment of a secured instrument that transfers ownership is effective in accordance with La. Civ. Code Ann. arts 2642 to 2646. Under those articles, the transfer of ownership of a secured instrument is effective as to the debtor and third persons after the debtor has actual knowledge of or notice has been given to the debtor of the transfer. The same knowledge or notice is required for a partial transfer or assignment.

33. Accordingly, upon the execution of the note or other written instrument evidencing the obligation and the execution and recordation of the collateral mortgage or vendor's privilege that secures that note or instrument, the assignment of the written instrument that transfers ownership of the instrument is effective as to third persons upon physical transfer of the written instrument

to the assignee and the debtor has actual knowledge or has been given notice of the assignment. La. Civ. Code Ann. art 2643.

34. ICS Nett, Inc. purchased the BLX paper and the judgment by assignment.

35. ICS Nett, Inc. has every right to enforce the limited guarantee signed by plaintiff.

36. The evidence does show that an agreement was signed in favor of plaintiff requiring indemnification should his 40% guarantee be enforced against him. However, that agreement, (P-5) only binds Swiftships Shipbuilders, LLC, Swift Group, LLC, Swiftships Technologies, LLC, Land & Industrial Asset Management, LLC, and Champion Shipyards. Inc. These parties may be called upon to indemnify plaintiff, but this does not prevent the holder of this paper, ICS Nett, Inc. from enforcing its rights as against plaintiff.

RESPECTFULLY SUBMITTED BY:

NICHOLAS F. LaROCCA, JR., LTD.
(A Professional Law Corporation)


*S/Nicholas F. LaRocca, Jr.*
NICHOLAS F. LaROCCA, JR. (B.R. #8045)
607 Brashear Avenue
Post Office Box 2466
Morgan City, LA  70381-2466
Telephone:  (985) 385-4800


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served on all counsel of record via electronic mail and/or by depositing same in the United States Mail, postage prepaid and properly addressed, this 26th day of October, 2018.

*S/Nicholas F. LaRocca, Jr.*
NICHOLAS F. LAROCCA, JR.