# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

DENNIS R. SPURGEON                    CIVIL ACTION NO. 6:11-CV-01807

VERSUS                               JUDGE TERRY A. DOUGHTY

CALVIN J. LELEUX, ET AL.             MAG. JUDGE PATRICK J. HANNA

## OPINION

This is a breach of contract case brought by Plaintiff Dennis R. Spurgeon ("Spurgeon") against Defendants Calvin J. LeLeux; Swift Group, LLC; ICS Nett, Inc.; Jeffrey LeLeux; Shehraze Shah; Khurram Shah; Swiftships Shipbuilders, LLC; Swiftships, LLC; and Swiftships Group, Inc.

This matter came for trial before the Court on November 5 and 6, 2018.

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

## FINDINGS OF FACT

In 1985, Spurgeon and others purchased a boat building company known as "Swiftships" located in Morgan City, Louisiana. In July 1999, the company was reorganized into Swift Group, LLC, a Louisiana limited liability company, which became the *holding* company and Swiftships Shipbuilders, LLC, also a Louisiana limited liability company, which became the *operating* company. The holding company, which owned 100% of the operating company, was owned 40% by Spurgeon, 40% by Bob Ness ("Ness") and 20% by Calvin LeLeux. Land

holdings were placed in separate companies also owned 100% by the holding company.

## A. The BLX Loan

The operating company, Swiftships Shipbuilders, LLC, manufactured military patrol boats for the U.S. Navy and other countries, and supply boats and crew boats for the oil and gas industry. In June 2000, the owners determined that the facilities needed to be upgraded. A loan in the amount of $5 million was obtained from BLC Commercial Capital (subsequently BLX). Each member of the company, including Spurgeon, was required to personally guarantee the loan up to the percentage of their ownership. Accordingly, Spurgeon signed a personal guarantee in the amount of 40% of the total loan amount.

In a commitment letter signed prior to the loan agreement, it was agreed that any guarantor who sold his interest in Swift Group, LLC, would be released as a guarantor. Additionally, the letter provided that any entity purchasing more than 20% interest in the company would be required to guaranty the loan up to that entity's percentage ownership.

## B. Sale of Spurgeon's Interest

On September 20, 2002, an agreement was executed whereby Spurgeon sold his 40% interest in Swift Group, LLC, to the remaining members, Ness and Calvin LeLeux. By virtue of this sale, Ness and Calvin LeLeux were to each own a 50% interest. The consideration to be paid Spurgeon for the sale of his interest was to come from the liquidation of the company's boatyards in Mississippi and Texas. Specifically, Spurgeon was to get one-third (1/3) of the proceeds from those two sales.

## C. Spurgeon Learns of Default of Sale Agreement

In 2007, Spurgeon learned that the Mississippi property had been sold in 2004. He contacted Calvin LeLeux to ask why he had not been paid his one-third (1/3). Calvin LeLeux

sent Spurgeon an accounting of the sale of the Mississippi property on April 2, 2007.   In that accounting, Calvin LeLeux acknowledged that Swiftships Shipbuilders, LLC, was indebted to Spurgeon in accordance with the sale agreement in the amount of $550,000 which represented the portion of the sale of the Mississippi property that should have been paid to Spurgeon in 2004.   Calvin LeLeux assured Spurgeon that he had a plan in place to take care of the indebtedness.

### D.      Default of BLX Loan

On December 15, 2008, BLX filed suit on the outstanding note.   Spurgeon was not advised that the suit had been filed, nor was he served with the lawsuit.   Unbeknownst to Spurgeon, and without his consent, Faisal Gill, counsel for Swift Group, LLC, and its subsidiaries, filed a formal response on behalf of Spurgeon to the BLX litigation on March 30, 2009.

Spurgeon is a graduate of the United States Naval Academy with a dual major in marine engineering and nuclear science, and holds two graduate degrees from the Massachusetts Institute of Technology in nuclear energy.   He was nominated and confirmed by the Senate to be the Assistant Secretary for Nuclear Energy in the George W. Bush administration.   He learned he had been sued by accident while Googling his own name in preparation for giving talks after he had left the Bush administration.   Upon learning of the lawsuit, he contacted Calvin LeLeux to find out what was going on.   Calvin LeLeux assured Spurgeon that he would take care of it.

Spurgeon was subsequently asked to agree to a forbearance agreement and to a consent judgment in favor of BLX.   Spurgeon ultimately agreed that a consent judgment could be entered against him personally if he was given an "iron-clad" hold harmless agreement by the Swiftships related entities.   On December 1, 2010, a Release and Indemnity Agreement was

executed in favor of Spurgeon by Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships Technology, LLC; Land & Industrial Asset Management, LLC; and Champion Shipyard, "as well as their representatives, agents, employees, servants, officers, directors, stockholders, members, insureds, insurers, successors, assigns, parents, subsidiaries, affiliates, attorneys and all other persons, firms or corporations in privity therewith . . . ." [See Exhibit 5, Release & Indemnity Agreement dated December 1, 2010].    Faisal Gill executed the document on behalf of the named parties and affixed an affidavit wherein he attested that he had been authorized to execute the document on behalf of the parties as counsel.    A consent judgment was entered in favor of BLX and against Spurgeon, Calvin LeLeux, and the Swiftships-related entities.

### E.    LeLeux Takes On Lutfe Hassan d/b/a Apex Worldwide as Partner

During this period, press releases and publicly available information indicated that Swiftships Shipbuilders, LLC, had been awarded approximately $400 million in U.S. Navy ship-building contracts.    In 2008, 51% of Swift Group, LLC, including Ness's 50% interest, was purchased by Apex Worldwide Consulting ("Apex"), with Calvin LeLeux retaining a 49% interest.    On August 19, 2009, Calvin LeLeux transferred an additional 10% of his membership interest to Apex, resulting in Apex owning a 61% interest and Calvin LeLeux owning a 39% interest.

The sole owner of Apex was Lutfi Hassan ("Hassan").    An audit prepared by Price, Waterhouse, Cooper, C.P.A.s, completed on November 11, 2011, revealed that Hassan, acting through Apex, had moved $30 million cash from Swiftships Shipbuilders, LLC, to a related company in Dubai, known as Swiftships Development, LLC.    At trial, Calvin LeLeux described this transfer as "shameful" but asserted he was powerless to prevent it, as a minority stockholder. However, he admitted Swiftships Development, LLC, was also owned in part by himself.

According to Calvin LeLeux, based on this transfer of funds, and other financial problems caused by Hassan, the U.S. Navy wanted Hassan out of the company. As Hassan was moved out, Calvin LeLeux acquired 100% of Swift Group, LLC, by December of 2011.

### F. The Settlement Agreement and Its Breach

Meanwhile, after learning of the $400 million in Navy ship-building contracts, Spurgeon became concerned as to why he had not been paid the money owed to him. In May of 2011, Spurgeon; Calvin LeLeux; Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships Freeport, Inc; and Champion Shipyards, Inc., entered into a settlement agreement with reference to the consideration that was supposed to have been paid to Spurgeon as a result of the sale of his ownership interest in the company back in 2002, in addition to other undisputed monies owed Spurgeon.

Pursuant to the settlement agreement, Spurgeon was allowed to cash a check dated March 18, 2011, made payable to him in the amount of $308,993.97. It was further agreed that Spurgeon would be paid $200,000 on July 5, 2011; $300,000 on August 5, 2011; $500,000 on September 5, 2011; plus a minimum of $600,000 for his interest in the Texas property.

Spurgeon cashed the check for $308,993.97 and did receive and cash a check for $200,000 on or about July 5, 2011. However, it is undisputed that the remaining $1.4 million that is owed Spurgeon under the agreement has not been paid.

The settlement agreement contains a provision that permits Spurgeon to regain 40% interest in Swift Group, LLC, if the contract is breached.

On October 11, 2011, Spurgeon instituted this litigation against Swift Group, LLC, and Calvin LeLeux for breach of the contract. Spurgeon requested that the transfer of his 40% membership interest in Swift Group, LLC, be dissolved, that the defendants be ordered to deliver

a 40% membership interest in Swift Group, LLC, back to him, and that he be awarded damages.

On December 6, 2011, Spurgeon filed a motion for judgment on the pleadings. In response, on January 9, 2012, Calvin LeLeux filed an opposition stating that he no longer owned any interest in Swift Group, LLC, and, therefore, the return of Spurgeon's 40% interest was an unavailable remedy. Based in part on that representation, the Court denied the motion.

In his testimony at trial, Calvin LeLeux admitted that his representation that he no longer owned any interest at the time of the motion for judgment on the pleadings was not true, that he actually owned 100% of the company then, and that he had been negotiating an agreement for a new partner, ICS Marine, which, at the time, was a parts supplier to Swiftships Shipbuilders, LLC.

## G. Purchase by ICS Marine

An agreement was reached whereby ICS Marine purchased 50% ownership of Swift Group, LLC, in exchange for a waiver of $14 million owed by Swiftships Shipbuilders, LLC, to ICS Marine in accounts receivable, and a $4 million equity payment.

ICS Marine was owned by Khurram Shah, who asked his twin brother, Shehraze Shah, to handle the transaction whereby ICS Marine would acquire 50% interest in Swift Group, LLC. ICS Marine became a 50% owner in 2012, purchasing the 50% interest from Calvin LeLeux, who was the 100% owner.

## H. The Asset Purchase Agreements

On January 1, 2014, there was a complete corporate restructure of the Swiftships-related companies.

## 1. The Asset Purchase Agreement Between the Old Operating Company

**and the New Operating Company**

Swiftships Shipbuilders, LLC, the old operating company, entered into an Asset Purchase Agreement with Swiftships, LLC, the new operating company, dated January 1, 2014. Swiftships, LLC, is a Virginia limited liability company which was actually created on January 2, 2014, a day after this Asset Purchase Agreement became effective.   This agreement purported to transfer all of the assets of Swiftships Shipbuilders, LLC, to Swiftships, LLC.   The agreement indicated that Swiftships, LLC was acquiring approximately $30 million in assets in exchange for assuming approximately $30 million in liabilities.   However, no cash changed hands, and the debts purportedly assumed included almost $28 million in future costs to be acquired to complete the existing ship-building contracts, which would be reimbursed by the Navy.

Although the new operating company acquired *all* of the *assets* of the old operating company, the agreement stated that the new operating company was assuming only *some* of the *liabilities* of the old operating company, including those debts that were necessary to continue the outstanding contracts.   The debt owed Spurgeon was *not* listed as one being assumed by the new operating company.   Although the Defendants indicate that the BLX debt was assumed, that debt is not listed in the agreement.

The operations of the old operating company, Swiftships Shipbuilders, LLC, continued after the agreement, through the new operating company, Swiftships, LLC.   The boat building continued at the same location, with the same telephone number, the same website, using the same assets, most of the same employees, the same contracts, and the same CEO.

**2.     The Asset Purchase Agreement Between the Old Holding Company and the New Operating Company**

The second Asset Purchase Agreement purported to transfer all the assets of the old

*holding* company, Swift Group, LLC, to the new *operating* company, Swiftships, LLC. The agreement states that all of the assets were purchased for the sum of $1 million, although no money was actually paid. The agreement also states that Swift Group, LLC, had no liabilities despite the fact the company owed Spurgeon $1.4 million.

The *sole member* of Swiftships, LLC, was a newly created entity, Swiftships Group, Inc. The sole shareholders of the new corporation, Swiftships Group, Inc., were Shehraze Shah and Jeffrey LeLeux, son of Calvin LeLeux. Shehraze Shah owned 81% and Jeffrey LeLeux owned 19%. Jeffrey LeLeux paid no cash consideration for his 19% interest, but provided his experience and knowledge to the new entity.

### 3. The First NBC Line of Credit

In early January 2014 and in connection with the Asset Purchase Agreements, Shehraze Shah, acting through ICS Nett, Inc., a company which he owned 100% interest in, obtained a $30 million line of credit from First NBC Bank. The transferred assets of Swiftships Shipbuilders, LLC, were used as part of the collateral for the loan. The documentation shows that Shehraze Shah; ICS Nett, Inc.; Swiftships Shipbuilders, LLC; Swift Group, LLC; and Swiftships, LLC, were all makers of several of the notes, not simply guarantors. The line of credit was used as operating capital and was also used to pay some of the creditors of Swiftships Shipbuilders, LLC.

In September 2014, ICS Nett, Inc., which, as indicated above, is owned 100% by Shehraze Shah, used $5 million of the newly obtained line of credit to buy the BLX note. Spurgeon testified that ICS Nett, Inc., Shehraze Shah, and Calvin LeLeux have tried to use the BLX note to force Spurgeon to dismiss this lawsuit, by threatening enforcement of the BLX note against him, despite the December 1, 2010, Release and Indemnity Agreement. In October,

8

2016, ICS Nett, Inc., hired an attorney to schedule a judgment debtor examination of Spurgeon, but the examination was not conducted. ICS Nett, Inc., did not seek to conduct a judgment debtor examination of any other debtor.

### 4. Contract Novations

The Asset Purchase Agreements purported to transfer all assets of the old holding company and the old operating company, including the U.S. Navy contracts, to the new entity, Swiftships, LLC. In August 2014, the Defendants began seeking a novation for the U.S. Navy contracts. The attorneys wrote letters to the Navy in September and November 2014 claiming the transfer of assets was "properly affected under applicable law." The Navy was advised that the name change was merely "a corporate restructure of Swiftships related companies." Spurgeon testified that the letters did not mention to the Navy that the APAs had material misrepresentations about monies reported as being paid but were not paid or attesting that the selling company had no liabilities when it did. The Navy agreed to novate the contracts and changed the name of the entity on the contracts.

Contracts to build boats for South Oil Company, a company owned by the Iraqi Government, were not novated because they did not want to "rock the boat," according to Khurram Shah. Thus, the contracts were taken over by the new company, Swiftships, LLC, even though the contracts were in the name of the old operating company, Swiftships Shipbuilders, LLC, and all monies under the contracts went to the new operating company.

### I. Spurgeon's Demands

Spurgeon presents multiple claims. He asserts a claim for breach of the settlement agreement dated May 6, 2011, and alleges that Calvin LeLeux, Swift Group, LLC, and Swiftships Shipbuilders, LLC, owe him $1.4 million as a result of that breach. Those

9

Defendants do not dispute this claim.

Spurgeon also presents a claim against those Defendants for breach of the Release & Indemnity Agreement dated December 1, 2010, wherein they agreed to indemnify and hold him harmless for the BLX debt. He testified that not only did these Defendants fail to hold him harmless, but they also actually schemed with other Defendants to purchase the BLX debt with Swiftships, LLC's line of credit, place the BLX debt in a related company, ICS Nett, Inc., all in a plan to force him to abandon this litigation. Additionally, Spurgeon seeks a judicial declaration stating that ICS Nett, Inc., cannot enforce the BLX debt against him or, alternatively, that all Defendants are liable to Spurgeon for any sums he owes on the debt.

Spurgeon also named as Defendants Swiftships, LLC; Swiftships Group, Inc.; and ICS Nett, Inc., claiming that they have successor liability as a single business enterprise with Swift Group, LLC, and its subsidiary, Swiftships Shipbuilders, LLC, and are, therefore, solidarily liable for both of the above breach of contract claims.

Spurgeon also has set forth claims against all of the above Defendants, as well as the individuals Shehraze Shah, Khurram Shah, Calvin LeLeux and Jeffrey LeLeux, for fraud and for violation of the Louisiana Unfair Trade Practices Act, in addition to the breach of contract clams.

Finally, Spurgeon seeks an award for attorney's fees.

## CONCLUSIONS OF LAW

**A.     Breach of the Settlement Agreement of May 6, 2011**

(1)     Liability of the Parties to the Agreement

The parties to the settlement agreement with Spurgeon are Calvin LeLeux, Swift Group, LLC, and its subsidiaries, Swiftships Shipbuilders, LLC, Swiftships Freeport, Inc., and Champion Shipyards, Inc. Defendants do not dispute that Spurgeon is entitled to judgment for

10

$1.4 million against these Defendants. The settlement agreement did not provide for an award of attorney's fees.

(2)      Liability of Successors in Interest

As this is a diversity case, Louisiana substantive law applies. *See Klaxon Company v. Stentor Electric Mfg., Company, Inc.*, 313 U.S. 487 (1941). Under Louisiana law, the general rule is that where one legal entity sells or transfers all of its assets to another legal entity, the receiving entity is not liable for the debts and liabilities of the transferor. *See In Re Louisiana Crawfish Producers*, 772 F. 3d 1026, 1030 (5th Cir. 2014). However, there are four exceptions to this general rule:

1)     The purchasing [entity] expressly or impliedly agreed to assume such liabilities,

2)     The circumstances surrounding the transaction warrant a finding that there was a defacto merger of the two [entities],

3)     The purchasing [entity] is merely a continuation of the selling [entity] (the "mere continuation" exception), or

4)     The transaction is fraudulent in fact.

*Id*. at 1030.

The Fifth Circuit recognizes eight factors typically taken into account in determining if the successor corporation is a "mere continuation" of the predecessor:

(1)     Retention of the same employees;

(2)     Retention of the same supervisory personnel;

(3)     Retention of the same production facility in the same physical location;

(4)     Production of the same product;

(5)     Retention of the same name;

(6)    Continuity of assets;

(7)    Continuity of general business operations; and

(8)    Whether the successor holds itself out as the continuation of the previous enterprise.

*Hollowell v. Orleans Regional Hosp., LLC*, 217 F.3d 379, 391 (5th Cir. 2000) (citing *Russell v. SunAmerica Secs., Inc*., 962 F.2d 1169, 1176 n.2 (5th Cir. 1992)); *see also Munive v. Chet*, LLC *Morrison Offshore*, *LLC*, No. CIV.A. 06-11203, 2008 WL 544183, at *4 (E.D. La. Feb. 25, 2008) (citing same).

As a result of the Asset Purchase Agreements of January 1, 2014, all of the assets of both Swift Group, LLC, and Swiftships Shipbuilders, LLC, were transferred to Swiftships, LLC. The liabilities to Spurgeon and others were left in the original companies. Calvin LeLeux described the transaction as a "sanitized bankruptcy."

The undisputed evidence indicates that the new operating company, Swiftships, LLC, continued operating the same business of the original companies, in the same location, using primarily the same employees, working on the same contracts, and with the same CEO, Shehraze Shah, in charge. Additionally, although Swift Group, LLC and Swiftships Shipbuilders, LLC, had assets worth millions of dollars, primarily government shipbuilding contracts, most of the $30 million in debt assumed ($28 million) was not debt at all, but was contract costs that were going to be reimbursed by the U.S. Navy. Further, in the transfer from the old holding company, Swift Group, LLC, to the new operating company, Swiftships, LLC, the transfer falsely stated that Swift Group, LLC, had no liabilities and that Swift Group, LLC, was being paid $1 million for the transaction. Additionally, although the South Oil Company contracts were in the names of the old operating company, Swiftships Shipbuilders, LLC, the new

company, Swiftships, LLC, took over those contracts and all monies from the South Oil Company contracts went to the new company.

This Court believes both Asset Purchase Agreements transactions were fraudulent, intended to continue the same business and to escape liability from creditors. The Court finds that the third and fourth exceptions set forth above apply under the facts of this case, making Swiftships, LLC, additionally liable for the liabilities of the prior companies. The undisputed evidence indicates that Swiftships, LLC, and Swiftships Group, Inc., were merely continuations of Swift Group, LLC, and Swiftships Shipbuilders, LLC, after the Asset Purchase Agreements. Further, the two Asset Purchase Agreements were entered into in an attempt to escape liability. The principals admitted they only accepted liabilities that were required to continue with the existing contracts. Other liabilities, including the debt to Spurgeon, were simply left behind. The restructuring through the purported Asset Purchase Agreements was simply maneuvering to escape the debt—a "sanitized bankruptcy"—maneuvering which the law does not condone.

Therefore, Swiftships, LLC, and its sole member, Swiftships Group, Inc., are additionally liable for the $1.4 million owed Spurgeon for the breach of the settlement agreement as a debt owed by its predecessor companies.

(3) Liability of ICS Nett, Inc.

Spurgeon contends that ICS Nett, Inc., is additionally liable for the $1.4 million owed him, under the single-business enterprise doctrine.

The single-business-enterprise doctrine is a theory for imposing liability where two or more business entities act as one. *Brown v. ANA Ins. Grp.*, 07-2116 La. 10/14/08), 994 So.2d 1265, 1266. Generally, under this doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful

13

acts done in pursuit of that purpose.   *Id.*

> When determining whether a corporation is an alter ego, agent, tool or instrumentality of another corporation, the court is required to look to the substance of the corporate structure rather than its form.   The courts have considered various factors to support an argument that a group of entities constitute a single-business enterprise.   These factors can include such things as whether corporations have substantial identity of ownership, that is, ownership of sufficient stock to give actual working control over another corporation; common directors or officers; unified administrative control of corporations whose business functions are similar or supplementary; directors and officers on one corporation acting independently in the interest of that corporation; corporation financing another corporation; corporation paying the salaries and other expenses or losses of another corporation; receiving no business other than that given to it by its affiliated corporations; corporation using the property of another corporation as its own; noncompliance with corporate formalities; and common employees and services rendered by the employees of one corporation on behalf of another corporation.   This list is illustrative and is not intended as an exhaustive list of relevant factors.   No one factor is dispositive of the issue of single - business enterprise.

*Che v. First Assembly of Good, Ruston, LA*, 50,360 (La. App. 2 Cir. 1/13/16), 185 So.3d 125, 134-135 (*citing Green v. Champion Ins. Co*., 577 So. 2d 249 (La. App. !st Cir. 1991), *writ denied*, 580 So.2d 668 (La. 1991)).

Defendants assert that ICS Nett, Inc.'s business is to provide advance information systems to the government, including agencies such as the CIA, NSA, and to provide support to law enforcement, including the FBI, ATF, DEA, and to manage those network support services. Swiftships, LLC's business, on the other hand, is to build ships, primarily for the U.S. Navy and foreign sovereignties, under the aegis of the U.S. government.   Neither ICS Nett, Inc., nor Swiftships, LLC, share any business or channel business one to the other.

Defendants further contend that Swiftships, LLC, and ICS Nett, Inc., operate

independently of each other; that there is no commonality of employees; that neither pays the salaries to each other's payroll; that they are completely different businesses, engaged in different industries and have nothing in common with each other; that Swiftships, LLC, has no control over any business that ICS Nett, Inc., engages in; that each complies with all corporate formalities; that they do not share any profits or losses; and that they never use or borrow each other's equipment.

Spurgeon responds that, with regard to the first factor, substantial identity of ownership, ICS Nett, Inc., is owned 100% by Shehraze Shah, who was CEO of Swiftships Shipbuilders, LLC, prior to the Asset Purchase Agreements. He was 81% owner of Swiftships Goup, Inc., the sole member of Swiftships, LLC, as well as CEO of Swiftships, LLC, immediately after the transfer of assets. Calvin LeLeux was 50% owner and Chairman of Swiftships Shipbuilders, LLC, prior to the Asset Purchase Agreements. He became a "consultant" to Swiftships, LLC, after the Asset Purchase Agreements, and his son, Jeffrey LeLeux, became President and was handed 19% equity interest in Swiftships Group, Inc., the sole member of Swiftships, LLC, without paying any money for that 19% interest.

This Court agrees with Spurgeon that it is indisputable that Shehraze Shah and the LeLeuxs had actual working control over all the entities involved in the shuffle of assets.

With regard to the "corporation financing another corporation" factor, ICS Nett, Inc., along with Shehraze Shah, Swiftships Shipbuilders, LLC, and Swiftships, LLC, all acted together to establish a line of credit for $30 million with First NBC Bank at the time the Asset Purchase Agreements were executed. This line of credit was used to fund the Asset Purchase Agreements, by paying the Swiftships Shipbuilders' debts that Defendants needed to satisfy in order to continue operating. They all were joint "makers" of various notes coming out of the

15

same source of funds identified as the $30 million line of credit. This line of credit was used as a single source of funds for ICS Nett, Inc., and Swiftships, LLC. Shehraze Shah reached into the line of credit to borrow money to buy the BLX note in the name of ICS Nett, Inc. He then attempted to enforce the note only against Spurgeon, in an apparent effort to have Spurgeon dismiss this lawsuit. This constitutes evidence of entities integrating "their resources in order to achieve a common business purpose." That common business purpose was to get rid of the Spurgeon lawsuit.

At the very least, ICS Nett, Inc., co-mingled the source of funds and created a joint debt with Swiftships Shipbuilders, LLC, and Swift Group, LLC, which is another consideration in favor of finding these companies are the alter ego of one another. ICS Nett, Inc., operated as the alter ego of Swift Group, LLC, and Swiftships Shipbuilders, LLC, as well as the new operating company, Swiftships, LLC.

For these reasons, ICS Nett, Inc., is also liable for the $1.4 million owed Spurgeon.

The Court agrees with Defendants that the Single Business Enterprise doctrine applies only to the entities which form the SBE and does not extend to individual liability. *Brown v. ANA Ins. Group*, 994 So.2d 1265, 1266 n 2 (La. 2008). Accordingly, Shehraze Shah, Khurram Shah, Jeffrey LeLeux and Calvin LeLeux cannot be held liable individually under a theory of Single Business Enterprise. *See, e.g., Andretti Sports Marketing of Louisiana, LLC v. NOLA Motorsports Host Committee, Inc.*, 147 F. Supp. 537, 553 (E.D. La. 2015).

(4)     Breach of the Release and Indemnity Agreement

In the commitment letter that was part of the BLX loan agreement, it was agreed that any guarantor who sold his interest in Swift Group, LLC, as Spurgeon did in 2002, would be released as a guarantor. Additionally, the letter provided that any entity purchasing more than 20%

interest in the company would be required to guaranty the loan up to that entity's percentage ownership.

Spurgeon operated on the assumption that these terms would be honored. However, when he subsequently learned that BLX had filed suit, he agreed to the entry of a consent judgment against him on the BLX debt only if he was given an "iron clad" hold harmless agreement by the other defendants to the suit.

The Defendants contend that the Release and Indemnity Agreement bound only the signatories thereto, Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships Technology, LLC; Land & Industrial Asset Management, LLC; and Champion Shipyard.

However, the Agreement by its terms actually applies to the named parties "as well as their representatives, agents, employees, servants, officers, directors, shareholders, members, insureds, insurers, successors, assigns, parents, subsidiaries, affiliates, attorneys, and all other persons, firms or corporations in privity therewith." Therefore, the Court finds that, under the terms of the Release and Indemnity Agreement, Spurgeon is entitled to judgment holding that he has no liability to ICS Nett, Inc., on the BLX note. The Release and Indemnity Agreement bound not only Swift Group, LLC, and Swiftships Shipbuilders, LLC, but also their subsidiaries, agents, employees, officers, directors, shareholders, successors, and assigns. Swiftships, LLC, is clearly a successor. The sole member of Swiftships, LLC, is Swiftships Group, Inc. The sole shareholders of Swiftships Group, Inc., are Shehraze Shah and Jeffrey LeLeux, son of Calvin LeLeux. Jeffrey LeLeux and Calvin LeLeux were executive officers or members of Swiftships Shipbuilders, LLC, at the time the document was signed. Shehraze Shah owned 81% of Swiftships Group, Inc., and Jeffrey LeLeux owned 19%. Shehraze Shah is also 100% owner of ICS Nett, Inc.

Additionally, ICS Nett, Inc., purchased and was assigned the note.   This Court has previously found ICS Nett, Inc., was the alter ego of Swift Group, LLC; Swiftships Shipbuilder, LLC; and Swiftships, LLC.   ICS Nett, Inc., qualifies as a "successor" or "assign" under the terms of the agreement.

Since the specific terms of the Release and Indemnity Agreement bound its agents, employees, officers, directors, shareholders, successors and assigns, Spurgeon's obligation on the note is extinguished.   Spurgeon is also entitled to judgment holding that he is released from all liability on the consent judgment.

### B.    Fraud

Spurgeon has alleged that the Defendants engaged in fraud and that he has sustained damages as a result.   Under Louisiana law, fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.   Fraud may also result from silence or inaction.   LA C.C. ART. 1953.   The Louisiana Supreme Court has indicated that a plaintiff who has been defrauded in the performance of a contract is entitled to damages, including attorney's fees.   *Stutts v. Melton*, 2013-C-0557 (La. 10/15/13), 130 So.3d 808.

In *Stutts*, the Louisiana Supreme Court determined whether attorney's fees are only available in a fraud case where the plaintiff seeks rescission of the contract.   After a detailed analysis, the Court determined that attorney's fees are available to the plaintiff who seeks damages from breach of contract based on fraud, the rationale being that when an obligor has committed fraud, the Louisiana Civil Code intends to punish the fraudulent conduct regardless of whether the plaintiff (obligee) seeks rescission of the contract or damages flowing from a fraudulent breach.

18

Defendants contend that the evidence shows a breach of contract, but not fraud. They assert that the chief advantage of an asset sale over a merger or share exchange is the ability to pick and choose among assets and liabilities to be transferred, and, therefore, the Asset Purchase Agreements at issue were valid contracts.

In this case, the Court finds there are numerous instances where the Defendants have engaged in fraud. For example, the Asset Purchase Agreements were undertaken fraudulently. They were not entered into at arms' length, and they contained terms that were false. The Asset Purchase Agreement with Swift Group, LLC, states that $1 million was paid. That statement was false. The Asset Purchase Agreement also indicates that Swift Group, LLC, has no debt. That statement was also false. Likewise, the vast majority of the debt allegedly assumed in the Asset Purchase Agreement of Swiftships Shipbuilders, LLC, was not really debt at all. It was merely the cost of continuing the boat building -- which costs would be reimbursed to Swiftships, LLC, by the U.S. Navy as those expenses were incurred. This shows that only approximately $2 million of the $30 million was actually debt. Additionally, there was no testimony that the approximate $2 million in real debts was actually paid.

These false statements, and the Asset Purchase Agreements in general, were undertaken for the purpose of defrauding the creditors of Swift Group, LLC, and Swiftships Shipbuilders, LLC, including Spurgeon. The true intent of the parties is shown by Calvin LeLeux's reference to the transfers as a "sanitized bankruptcy." The intent was to defraud creditors.

When Calvin LeLeux was operating Swiftships Shipbuilders, LLC, with Lutfe Hassan, he allowed tens of millions of dollars to be shipped to Dubai and placed in the name of a company in which he owned an interest. This activity served to defraud the creditors of Swiftships Shipbuilders, LLC, including Spurgeon. Also, Calvin LeLeux allowed the Mississippi property

to be sold in 2004, without paying Spurgeon the one-third (1/3) Spurgeon was entitled to and, further, Calvin LeLeux didn't mention the sale to Spurgeon, who found out inadvertently three years later.

When the Defendants undertook to obtain novation agreements from the U.S. Navy, obvious misrepresentations and omissions were made regarding the status of the companies. The U.S. Navy was not told that Spurgeon had a lawsuit pending wherein he claimed entitlement to 40% of the company. The U.S. Navy was told only that there had been a corporate restructure, in essence, a "name change." Ship-building contracts totaling up to $400 million were transferred from Swift Group, LLC and Swiftships Shipbuilders, LLC, to the new operating company, Swiftships, LLC, defrauding creditors including Spurgeon. The South Oil Company contracts remained in the name of the old company, Swiftships Shipbuilders, LLC, but were taken over by the new company, Swiftships, LLC.

Employees of the new company, Swiftships, LLC, would pretend they were still working for the old company, Swiftships Shipbuilders, LLC, when providing the U.S. Navy with required statements. In-house counsel and outside counsel, Faisal Gill, wrote letters to the Navy advising that the transactions had been completed in accordance with law. All of this was undertaken to defraud creditors, including Spurgeon.

Calvin LeLeux also testified that he lied to this Court when Spurgeon initially filed suit seeking the return of his 40% interest in Swift Group, LLC. Calvin LeLeux filed documents into the record stating he had no ownership interest in Swift Group, LLC, and, therefore, could not transfer Spurgeon's 40% interest back to him. At the time, he owned and controlled 100% interest in Swift Group, LLC. This misrepresentation by Calvin LeLeux has cost Spurgeon an additional seven years of litigation which was made all the more complex by the subsequent

20

fraudulent activities, including execution of the Asset Purchase Agreements for the purpose of moving assets beyond the reach of creditors.

The Defendants then concocted a scheme for the purchase of the BLX debt by ICS Nett, Inc., for the sole purpose of avoiding the Defendants' responsibility under the Release and Indemnity Agreement. Using the NBC line of credit as a source of co-mingled funds, the Defendants could have had Swiftships Shipbuilders, LLC, or Swiftships, LLC, buy the note and follow through on their promise to hold Spurgeon harmless. Instead, they used co-mingled loan funds to purchase the note in the name of ICS Nett, Inc. Then, they immediately tried to use the purchased note to force Spurgeon to drop his legitimate claim, by setting up a judgment debtor examination of Spurgeon. This Court can find no legitimate reason for ICS Nett, Inc., to have purchased the BLX note, other than to attempt to force Spurgeon to drop this lawsuit. Spurgeon testified that Calvin LeLeux told him the BLX debt would be forgiven if he dropped his lawsuit. Shehraze Shah did not deny this.

This Court believes that Calvin LeLeux and Shehraze Shah should be held liable individually for fraud, in addition to Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships, LLC; ICS Nett, Inc., and Swiftships Group, Inc. (the sole member of Swiftships, LLC). The previously discussed actions of these Defendants show they were deeply involved in a scheme to defraud creditors, including Spurgeon. Calvin LeLeux defrauded Spurgeon in many ways and at many times.

Shehraze Shah was deeply involved in the Asset Purchase Agreements which resulted in sales of all of the old Swiftships assets and contracts, with virtually no money in exchange. Shehraze Shah became owner of an 81% interest in the new Swiftships companies, which had huge government ship-building contracts, that virtually no consideration was paid for.

21

Additionally, Shehraze Shah even used the Swiftships, LLC, line of credit to purchase the BLX note for his company, ICS Nett, Inc., in order to obtain leverage over Spurgeon in this lawsuit.

Spurgeon is entitled to judgment against Defendants Calvin LeLeux; Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships, LLC; Swiftships Group, Inc.; ICS Nett, Inc.; and Shehraze Shah for damages, which in this case is the $1.4 million he is owed by virtue of the settlement agreement, and for attorney's fees, for the fraud perpetrated against him. These Defendants were deeply involved in the above actions which this Court believes was for the purpose of defrauding Spurgeon.

This Court does not find Jeffrey LeLeux or Khurram Shah personally liable. Although both were involved in some of the transactions, the evidence is not sufficient to show either intended to defraud Spurgeon.

### C.  Louisiana Unfair Trade Practice Act ("LUTPA")

Spurgeon alleges the Defendants' conduct constituted a violation of LUTPA, La. Rev. Stat. 51:1401, et al.

Defendants contend that it is well established in the Fifth Circuit that LUTPA claims may be advanced only by business competitors or individual consumers, citing *Turbos de Acero de Mexico, S.A. v. American Int'l Inv. Corp*., 292 F.3d 471, 480 (5th Cir. 2002); *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc*., 922 F.2d 220, 226-27 (5th Cir. 1991); *Central Healthcare Servs., Inc. v. Eterna Petersburg, Inc*., 2004 WL 1823036 at 2 (E.D. La. Aug. 16, 2004); *Total Sleep Diagnostics, Inc. v. United Healthcare Ins. Co*., 2009 WL 152537 (E.D. La. Jan. 21, 2009); *Washington Mut. Bank v. Monticello*, 976 So.2d 251, 258 (La. App. 3d Cir. 2008).

Defendants further contend that Spurgeon's claim under LUTPA is untimely. All of the

acts of which Spurgeon complains were undertaken during the period 2000-2014, but he first asserted the LUTPA cause of action by his fourth amended complaint filed on November 1, 2017, more than one year after the acts of which he complains. Prior to its 2018 amendment, LA. REV. STAT. 51:1409E provided "[t]he action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action."

Defendants contend that this one-year period is a peremptive, rather than a prescriptive period, and, therefore, it cannot be interrupted or suspended. Spurgeon, on the other hand, contends that the period is prescriptive, and that the LUTPA cause of action set forth in his amended petition relates back to his initial filing.

The Court agrees with Defendants that the one-year period is peremptive. *See Adcock v. Wooten*, (La. Ap. 2 Cir. 9/30/15), 180 So.3d 473, 477 (citing *Glod v. Baker* (La. App. 3d Cir. 3/23/05), 899 So.2d 642, writ denied, 05-1574 (La. 1/13/06), 920 So.2d 238)); *Tubos de Acero de Mexico, supra; CheckPoint Fluidic Systems Intern., Ltd. v. Guccione,* 888 F. Supp. 2d 780 (E.D. La. 2012); *Bladen v. C.B. Fleet Holding Co*., 487 F. Supp. 2d 759 (W.D. La. 2007). Therefore, the Court denies Spurgeon's LUTPA claim as untimely.

### D.    Attorney's Fees

While the fraudulent actions of Defendants Calvin LeLeux; Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships, LLC; Swiftships Group, Inc.; ICS Nett, Inc.; and Shehraze Shah do not give rise to damages other than the $1.4 million owed to Spurgeon, they do permit the Court to award attorney's fees to Spurgeon.

Factors to be taken into consideration in determining the reasonableness of attorney's fees include:   (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) extent and character of the work

performed; (6) legal knowledge, attainment, and skill of the attorney; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. *State Dep't. of Trans. & Develop. v. Williamson*, 597 So.2d 439, 442 (La. 1992).

This matter has been pending since October 11, 2011. The Defendants have engaged in numerous attempts to make the recovery by Spurgeon much harder. They failed to pay him for the sale of the Mississippi property in 2004, requiring the Settlement Agreement to be worked out. They breached the Settlement Agreement, requiring suit to be filed.

This litigation could have been resolved in December, 2011, had Calvin LeLeux not intentionally misrepresented facts to the trial court regarding his ownership interest. The Defendants engaged in fraudulent sales of Swiftships Shipbuilders, LLC, and Swift Group, LLC, to Swiftships, LLC, transferring all the assets, but very few liabilities. Further, the Defendants engaged in a scheme to force Spurgeon to drop this litigation by buying the BLX debt and setting up a judgment debtor examination of Spurgeon. These actions should not be rewarded. This Court believes that Spurgeon should also be granted attorney's fees in this proceeding.

The facts of the case are quite complex only because the Defendants engaged in multiple schemes of moving assets in order to avoid paying Spurgeon's claim. Spurgeon entered into a contingency fee with his attorney based on the gross recovery. Considering all the circumstances of this case, the Court finds that attorney's fees of $500,000 would be customary, usual and reasonable, payable by Defendants Calvin LeLeux; Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships, LLC; Swiftships Group, Inc.; ICS Nett, Inc.; and Shehraze Shah.

## CONCLUSION

For the foregoing reasons, the Court renders judgment in favor of Dennis Spurgeon and

against Defendants Calvin LeLeux; Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships, LLC; Swiftships Group, Inc.; ICS Nett, Inc.; and Shehraze Shah, in the amount of $1,400,000.00, together with pre-judgment interest thereon provided by State statute from date of judicial demand until date of judgment and interest at the Federal rate from the date of judgment until paid.

The Court renders a declaratory judgment in favor of Dennis Spurgeon holding that no Defendant, including ICS Nett, Inc., may enforce the BLX judgment against him, and further holding that Spurgeon is released from liability on the BLX consent judgment.

The Court further renders judgment in favor of Dennis Surgeon and against Defendants Calvin LeLeux; Swift Group, LLC; Swiftships Shipbuilders, LLC; Swiftships, LLC; Swiftships Group, Inc.; ICS Nett, Inc.; and Shehraze Shah for all costs of this proceeding and for an additional award of attorney's fees in the amount of $500,000.00.

The Court further renders judgment in favor of Defendants Khurram Shah and Jeffrey LeLeux, dismissing all of Dennis Spurgeon's claims against them.

Monroe, Louisiana, this 8th day of January, 2019.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**